## Sitler et al. *versus* Gehr.

1. In an action of ejectment, where the issue is whether the plaintiff is related to the person who last died seised of the premises in dispute, declarations of deceased persons, admittedly relatives of the plaintiff, are inadmissible to establish the relationship in question, unless there is some evidence *aliunde* to prove that the declarants were related to the person dying seised. It need not be shown, however, that they belong to his branch of the family.

2. It is the province of the court to decide in a case like the above whether sufficient connection has been established to permit the declarations to go to a jury.

3. In the present case the plaintiff testified that he was named after the person who had last died seised of the premises in dispute, who was his uncle, and that his mother informed him of the fact. Declarations of certain deceased relatives of the plaintiff were then offered in evidence to establish the above relationship. The court admitted the evidence:
*Held,* that the plaintiff was a competent witness to establish the connection between the different branches of the family, and that this being established, the declarations were admissible in evidence.

4. Conclusions drawn from a conversation of two living persons are inadmissible in evidence on a question of pedigree.

5. A record of deaths and burials kept by the pastor of a church is admissible in evidence only to show the deaths and burials; where the pastor has also made entries as to the birth and parentage of the parties dying, these are not admissible in evidence, as it was no part of the pastor's duty to make such entries.

6. Mere identity of name is not even prima facie evidence of identity of person where the transactions are remote. A mortgage given 140 years before suit brought by a person of a certain name is therefore inadmissible in evidence to prove that a certain person of that name then resided in the same locality as the land upon which the mortgage was given, in the absence of any evidence to establish identity.

7. On a question of pedigree, ancient wills, deeds, mortgages, and other documents executed by parties bearing the same name as the parties to the suit, and containing recitals as to relationship, are inadmissible in evidence, in the absence of proof that the parties executing them were relations of the parties to the suit.

March 7, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county:* Of January Term, 1884, No. 299.

Ejectment, brought May 22, 1882, by Baltzer Gehr against David Sitler (tenant), Samuel H. Rothermel et al., heirs of Maria Rothermel, deceased, and George F. Miller and Amanda, his wife, in her right, et al., devisees of Hannah Nicely,

9 OUTERBRIDGE.—37.

deceased; to recover an undivided one third part of a messuage and tract of land, containing 231 acres, situate in Maxatawny township, Berks county.   Plea, not guilty.

On the trial, before SASSAMAN, J., it was admitted that one Catharine Geehr, commonly called Kitty Geehr, of Reading, Pa., died seised of the tract in question, May 10, 1877, intestate, unmarried, and without issue.   It then became necessary to follow the ascending line in order to ascertain the next of kin entitled to take.   Kitty Geehr had inherited said tract of 231 acres from her father, Jacob Geehr, who was the first purchaser thereof.   After several actions of ejectment title was adjudged to be vested, in equal undivided moities, in (1) Hannah Nicely, and (2) Samuel H. Rothermel et al., heirs of Maria Rothermel; as the next of kin of Kitty Geehr, being of the blood of Jacob Geehr, first purchaser, whose relationship was thus traced:   (See Pedigree, next page.)

Jacob Geehr's parents were Balser Geehr, of Berks county, and Catharine Yeager.   The latter had a brother, Frederick Yeager, who died in 1821, leaving two daughters, Hannah Nicely and Maria Rothermel, both of whom survived the said Kitty Geehr.   Maria Rothermel died intestate July 10, 1877, leaving as her heirs Samuel H. Rothermel et al., defendants in this action.   Hannah Nicely died in 1880, aged 94, having devised all her estate to Amanda Miller et al., also defendants in this action.

Pending proceedings in partition between said last mentioned parties, this action of ejectment was brought by Baltzer Gehr, of Crawford county, over 100 years of age, who, admitting the title of the defendants to two undivided thirds of said tract, claimed to be entitled to one equal undivided third thereof, as next of kin of Kitty Geehr, deceased, (and of the blood of Jacob Geehr, first purchaser,) in equal degree with the said Hannah Nicely and Maria Rothermel, through whom the defendants claimed.

Plaintiff traced his relationship thus:   (See Pedigree, next page.)   He was the son of Joseph Gehr, who, he claimed, was a brother of the said Balser Geehr, of Berks county, who was father of the said Jacob Geehr, first purchaser.   The defendants disputed the fact that Joseph Gehr was a brother of Balser Geehr, of Berks county, and this was the principal disputed question of fact in the case.

The name of the family in Berks county was spelled Geehr; that in Crawford county was spelled Gehr.   The name Yeager is synonymous with Hunter.

[Sitler v. Gehr.]

## PEDIGREE OF PARTIES.

## PEDIGREE OF CERTAIN WITNESSES.
(marked *)

Plaintiff called as a witness Solomon Gehr, a nephew of plaintiff, who had married a daughter of John Gehr, deceased, who also was a nephew of the plaintiff, and proposed to prove by the witness the declarations by the said John Gehr, in his lifetime, as to the relationship of Baltzer Gehr, the plaintiff, and Balser Geehr, of Berks county.

Offer objected to as hearsay evidence; that while hearsay testimony is allowable to prove pedigree and relationship, it is only such hearsay as is within the rules of evidence governing its admission, which the present offer is not; that before such declarations can be admitted, it must be proved by evidence *aliunde* to the satisfaction of the court that John Gehr was a member of this family of Balser Geehr of Berks county.

THE COURT. Under the necessities of the case the rule for the admission of hearsay evidence has arisen. The admission of hearsay evidence in cases of this kind, which could not be sustained upon any other class of testimony, has opened a very

wide door. It is difficult to say just exactly where the line of demarcation should be drawn between the hearsay admissible and the hearsay inadmissible. For the purpose of this trial the objections are overruled, offer admitted and bill sealed for the defendants. (First assignment of error.)

The plaintiff called Samuel Gehr, a son of the plaintiff, to prove the declarations of his deceased grandmother, Anna Maria Gehr, plaintiff's mother.

The defendants object to any testimony as to the declaration of decedent, because it is hearsay evidence, and that before such declarations can be admitted it must be proved by evidence *aliunde* to the satisfaction of the court, that the declarant was a member of the family of Balser Geehr of Berks county.

Objection overruled; evidence admitted; exception for defendant. (Second assignment of error.)

The plaintiff offered in evidence the deposition of Baltzer Gehr, the plaintiff in this case, taken July 19, 1882, in Crawford county, in the presence of counsel on the other side.

The defendants object to the reading of the deposition on the same ground that the previous witnesses were objected to, to wit: that before they can be admitted in evidence the plaintiff is required to show that the party declarant is connected with the family of Balser Geehr, of Berks county, by blood or marriage.

THE COURT. The deposition may be read, subject to eliminations marked at the last trial. The objection is overruled and bill sealed for defendants. (Third assignment of error.)

The plaintiff, having testified that he was over one hundred years of age; that he was born in Cocalico township, Lancaster county; that at the age of fourteen he moved with his family to Somerset county; that about the year 1800 he removed to Crawford county; that his father's name was Joseph, who was born in Germany; that his father had some brothers, all of whose names he did not remember; that the witness was named after his uncle, Balser Geehr, was asked the following question:

Q. Who told you about your Uncle Balser?

A. About his being my uncle, my mother told me that— she always called him my uncle; that's what made me know.

On his cross-examination he stated that his grandfather came from Germany, but his father was born in America.

The plaintiff offered the deposition of Ruth Trace, a niece of the plaintiff, for the same purpose as the deposition of Baltzer Gehr; objected to for the same reason.

Objections overruled; exception. (Fourth assignment of error.)

The plaintiff offered the deposition of Mary Gehr, a daughter

of the plaintiff, for the same purpose as the deposition of Ruth Trace. Objected to for same reason. Objection overruled and bill sealed. (Fifth assignment of error.)

The defendants offered to prove by Jacob C. Geehr, a grandson of Philip Geehr, who was a brother of Balser Geehr, of Berks county, that he visited Meadville in 1846 or 1847; that he remained there about a year, and became acquainted with a number of the Gehrs of Crawford county; that he attended the funeral of Jacob Gehr, near Gehrtown; that at that funeral he met John Gehr, a person considerably older than himself, and that he had a conversation with this John Gehr in reference to the families, the family he was connected with in Berks county, and the family there at Gehrtown, and that they both concluded that there was no relationship between them.

Objected to, because it is irrelevant, immaterial and indefinite, and in no way offering to connect the parties with whom the witness had his conversation, and with whom he talked, with any of the parties who have testified or made declarations that have been offered in evidence by the plaintiff to this suit, neither declarants nor witnesses.

THE COURT. I really do not see a distinction between this offer and the previous one. The offer is rejected, and bill sealed for defendants. (Sixth assignment of error.)

The defendants offered in evidence the original record of the Kutztown Evangelical Lutheran church, commencing in 1810, after the same had been proved by the witnesses, (Rev. G. H. Hinterleitner and Joseph Kutz), for the purpose of showing the burial record of Hannah Bast, showing the names of her parents, Conrad and Anna Maria Gehr, place of birth, Germantown, Pennsylvania, dates of birth and of death, which was the usual way of keeping the record. Also, the same with regard to Maria Eva Zimmerman, whose parents were the same persons, and the date of her birth and death.

Objected to, because the burial register offered is not evidence of anything except the death and burial of the person mentioned, and the time and place of burial, and none of these facts in relation to the persons mentioned, are material to this case. Also, because this is not a church record, but the private memorandum of the Rev. John Knoske, kept and claimed by him as his private property, containing a minute of his acts outside as well as inside the church; and it has not been shown that there was any law or regulation, or ritual of the church, requiring it to be kept, or that it was kept in accordance with any ecclesiastical or statute law; it being a private record it is hearsay evidence of the second degree. Something simply

[Sitler *v.* Gehr.]

that he heard and nothing that he knew, so far as the parents were concerned.

THE COURT. I have no hesitation to regard the book that is offered here as a registry for marriages, deaths and burials of the Evangelical Lutheran church of Kutztown, this county. And from an inspection of the book, I believe that it was intended to be kept, and possibly was kept, according to the requirements of the first section of the Act of 1700. If there was anything material in the offer, so far as regards the time of the death of Mary Eva Zimmerman and the death of Hannah Bast, this record would be admissible. I fail to see, however, how the time of the death of these women, who are conceded to be dead, is material to be proven. As to the other matters connected with the entry of their deaths, although in writing, I do not see that they rise above the character of the evidence offered in the deposition by the plaintiff this morning about the declarations of one Ingelhaupt, the declarations made by him to Baltzer Gehr of Crawford county, which I regarded as the declarations of an outsider of a family of the Gehrs in Crawford county. The declarations, beyond the official duty of John Knoske, spread upon this registry, are of no higher character than the declarations of an outsider to this Geehr family. I will hold the same rule as I did this morning; reject the offer, and seal a bill for the defendants. (Seventh assignment of error.)

The defendants having shown by the testimony of Joseph Kutz that he was a member of the Kutztown church; that the register offered in evidence was the registry of that church of deaths and marriages; that it was kept in the church for many years; that Hannah Bast was a sister of his grandfather, Philip Geehr; that he knew her in her lifetime, and she was buried at the church at Kutztown; and it having also been shown that Hannah Bast was the sister of Balser Geehr, and daughter of Conrad Geehr, the register is offered for the purpose of identifying the said Hannah Bast as the daughter of Conrad Geehr and Anna Maria, his wife, corroborative of the testimony of Joseph Kutz, and to show where and when she was born; this to be followed by evidence to show that at the time of her birth as set out in that registry, Conrad Geehr did live at Germantown, in Philadelphia county.

Objected to as irrelevant and incompetent; the time and place of Hannah Bast's death is not disputed or material.

THE COURT. This offer is substantially the same as that which we ruled. It is rejected and bill sealed for defendants. (Eighth assignment of error.)

The defendants having proved that Conrad Geehr was the father of Balser Geehr, it having appeared that Balser Geehr

[Sitler *v.* Gehr.]

lived in Oley township [Berks county], in 1770, the defendants offered in evidence a mortgage given by Conrad Geehr of Germantown, in the county of Philadelphia, province of Pennsylvania, carpenter, and Anna Maria his wife, to Conrad Reif of Oley township, in the county of Philadelphia, [?] dated the sixteenth day of May, 1743, mortgage on a certain messuage, tenement and tract of land in Germantown describing it as containing 7 acres, 130 perches; and also another tract adjacent thereto in Germantown, containing four acres; reciting that the said two parcels of land are the same which Griffith Jones and Elizabeth his wife, by their indenture of lease and release on the fifteenth and sixteenth days of November, 1739, did grant unto the said Conrad Geehr, his heirs and assigns. This for the purpose of showing where Conrad Geehr lived, and that he resided in Philadelphia as early as 1739; which will be evidence to show that some of the children of Conrad Geehr were born in this country and not in Germany, and therefore will contradict the plaintiff Baltzer Gehr, who stated that his mother told him that his father was the youngest and was born here, and that the others were all born in Germany; it is evidence that the families of Geehr in Berks county are entirely different from the Lancaster county family of Gehrs.

Objected to for the reason that there is no evidence to show that the Conrad Geehr mentioned by the witnesses ever lived in Germantown, and that the Conrad Geehr mentioned by the witness is not in any way identified with the Conrad Geehr who made this mortgage.

THE COURT. I do not see how evidence that Conrad Geehr made a mortgage recorded in Philadelphia for the purpose assigned here, which itself is argumentative, would be admissible; offer rejected, and bill sealed for the defendants. (Ninth assignment of error.)

The plaintiff having shown that his father, Joseph Gehr, lived on his brother Paul's land in Cocalico township, Lancaster county, before he moved to Cumberland county in 1788, the defendants offer in evidence deed from Thomas Cadwallader, of Philadelphia, to Paul Gehr, of Cocalico township, Lancaster county, dated January 12, 1769, for two tracts of land in said Cocalico township; one tract 120 acres, the other tract 19 acres.

Also, a mortgage of Paul Gehr, of Cocalico township, Lancaster county, to Thomas Cadwallader, of Philadelphia, dated January 13, 1769, for ninety pounds, on the same lands.

This is to be followed by evidence showing that there was only one Paul Gehr in said township of Cocalico owning land. This is offered as a link in the chain of testimony to show the

family of the plaintiff's father, and that this family was not connected with the family of Balser Geehr of Berks county.

The plaintiff objects unless it is proposed to show or offered to show that this Paul Gehr and Joseph Gehr are the identical persons referred to by the plaintiff in his testimony; and further, that the purpose of the offer does not appear; so far as any purpose appears it corroborates the plaintiff's case; and we want to know every other link in the chain which the defendant proposes to offer, and because it is immaterial.

THE COURT. By the evidence of the plaintiff in his deposition, it appears that he has some indistinct recollection about having lived in Lancaster county, possibly in Cocalico township; and in his answer to the last question but one, which answer seems to be unfinished, he speaks of his father, Joseph Gehr, having lived on his brother Paul Gehr's farm. That is his language. It would be competent for the defendants to show that the Baltzer Gehr, of Crawford county, and his father's brother, Paul, of Lancaster county, were part of the same family and a different family from the Balser Geehr family of Berks county. And if it were shown that they were another and a different family from the Berks county family, that would be an end of this case. But I do not see how the item of evidence offered here, standing by itself and alone, would be admissible for that purpose. Standing as it does, the offer is rejected, and bill sealed for defendants. (Tenth assignment of error. The eleventh and twelfth assignments were substantially similar to the tenth.)

The defendants proposed to show by the assessment lists of Cocalico township, Lancaster county, about the year 1770, that there was but one Paul Gehr assessed for lands in said Cocalico township; that said lands were acquired by him from Thomas Cadwallader by deed of January 12, 1769; and that said Paul Gehr, of Cocalico township aforesaid, gave a mortgage to Thomas Cadwallader aforesaid on said lands, dated January 13, 1769, for ninety pounds; to show that the Paul Gehr who owned these lands was the same Paul Gehr that the plaintiff testifies in his deposition was the brother of his father, Joseph, who lived on Paul Gehr's land.

Objected to by the plaintiff; the assessment lists will show nothing but the bare fact that there was an assessment of one Paul Gehr; if they precede that evidence by a fact showing that a Paul Gehr who was the son of John Gehr is the one who is mentioned in these deeds, and who is mentioned in the assessments, and that he is the one who is mentioned by the plaintiff in his testimony, we have no objection. If it is put in such a form that it seems to be evidence, we will not object.

Also, a mortgage from John Gehr, Sr., of the county of

[Sitler *v.* Gehr.]

Lancaster and province of Pennsylvania, of the one part, and Paul Gehr and Andrew Gehr, both sons of the said John Gehr, of the same place, of the other part, dated the twenty-first day of November, 1757, and recorded in the recorder's office at Lancaster, Book E., page 221.

To be followed by evidence that the Paul Gehr spoken of in this mortgage as one of the mortgagees is the same Paul Gehr who owned land in Cocalico township, Lancaster county, and which was conveyed to him by deed from Thomas Cadwallader of Philadelphia, dated January 12, 1769.

To be followed further by evidence to show that the Paul Gehr of Cocalico township, was the only Paul Gehr in said township, who was the owner of land, in fact the only Paul Gehr in that township, and that by the records of assessment of Cocalico township he is assessed as owning lands in that township.

Under this offer, which was permitted provisionally, the defendants offered in evidence exemplication from the records of Lancaster county of a mortgage of John Gehr, Sr., to Paul and Andrew Gehr: "This indenture, made the twenty-first day of November, 1757, between John Gehr, Sr., of the county of Lancaster and province of Pennsylvania, yeoman, on the one part, and Paul Gehr and Andrew Gehr, both sons of the said John Gehr, of the same place, yeoman, of the other part."

Also, deed of Thomas Cadwallader to Paul Gehr, made the twelfth day of January, 1769, between Thomas Cadwallader, of Philadelphia, province of Pennsylvania, practitioner in physic, and Paul Gehr, of Cocalico township, of said province, yeoman, on the other part; for two tracts of land in said Cocalico township.

Also, original record from the recorder's office of Lancaster county of the mortgage of John Gehr, Sr., to Paul and Andrew Gehr of November 21, 1757, containing the following entry on the margin, to which is attached the original signature of Paul Gehr in German, which is offered as part of the proof to identify the Paul Gehr in that mortgage with the Paul Gehr in Cocalico township, the grantee in the Cadwallader deed:

"I, Paul Gehr, the surviving mortgagee in this mortgage, do hereby acknowledge to have received of John Gehr and George Gehr full satisfaction on the within mortgage. Witness my hand and seal, this eighth day of May, 1772.
    (Signed,)                             PAUL GEHR.
"Acknowledged before me the day and year before written.
    (Signed,)                           EDWARD SHIPPEN."

Also, the original will from the records of Lancaster county of Paul Gehr, of Cocalico township, for the signature of Paul Gehr. This to show that the will and certificate of satisfaction were signed by the same person.

The next evidence in connection with this chain of title is a deed dated the twenty-first of April, 1774, from John Gehr and George Gehr, both of Earl township, in the county of Lancaster, and in the province of Pennsylvania, yeomen; this is a deed to Joseph Gehr, of Earl township.

The defendants offer in evidence deed dated the twenty-first of April, 1774, from John Gehr and George Gehr, both of Earl township, county of Lancaster, province of Pennsylvania, to Joseph Gehr, of Earl township aforesaid, yeoman; reciting that the said John and George Gehr are minded to sever their joint tenancy and hold in severalty; they therefore convey the said tracts to Joseph Gehr, of Earl township, for five shillings to hold the said moiety, one half for the use of the said John Gehr, and the other to the use of the said George Gehr.

And to show by the recitals in this deed that the said John Gehr and George Gehr were sons of John Gehr, Sr., and that it was the same John Gehr, Sr., who is the mortgagor in the previous mortgage of the twenty-first of November, 1757, to his two sons, Paul and Andrew, the same tract with the same boundary being in both; reciting a deed to them, dated August 24, 1757, from John Gehr, of Earl township, and Catharine his wife, to John Gehr and George Gehr, sons of the said John and Catharine Gehr, for a tract of land in Earl township, containing 103 acres and allowance; which is the same land by boundaries and extent as is described in the mortgage which John Gehr gave to his other two sons, Andrew and Paul, previously given in evidence; the purpose of the offer being to connect George Gehr and John Gehr with Paul Gehr and Andrew Gehr as brothers, and as all four being sons of John Gehr, Sr., and they having given a deed, for the purpose of severing a joint tenancy, to Joseph Gehr, of Earl township, who is proved by the deposition of the plaintiff to be the youngest son, brings him in connection with the persons who are testified by him to be brothers of his father, to wit: Andrew, and John, and Paul—three brothers whom he testifies his father had—as the sons of John Gehr, Sr.

The offer is objected to by the plaintiff; because it is not shown that Paul Gehr mentioned as the son of John is the Paul who was brother of Joseph; and that it does not appear in any way that Joseph was a brother of these parties here named.

Defendants next propose to prove by Frank Griest the records of assessment of Cocalico township, Lancaster county,

for the years 1770, 1771, 1772 and 1773; to show that they contain the name of one Paul Gehr, who is assessed for a hundred acres of land in that township, and that there is no other Paul Gehr assessed for lands, and no other Paul Gehr assessed at all in Cocalico township during those years; to be followed by the will of Paul Gehr, who died in 1773.

Objected to by the plaintiff, because that does not prove the identification; they have already by the will shown that Paul Gehr died in 1773, at least prior to November, 1773; because that is the date on which the will was put on record, and letters granted; and that is nine years prior to the birth of Baltzer Gehr, the plaintiff; and it in no way shows that the Paul Gehr who was assessed in 1770, 1771, 1772 and 1773, was the Paul Gehr mentioned by Baltzer Gehr in his testimony.

THE COURT. We have launched into a line of testimony that seems to me at the least of doubtful admissibility. There is no difficulty about the admissibility of the recitals of ancient deeds in evidence of pedigree. There may be for certain purposes no difficulty about the admissibility of tax registers, assessments, or duplicates, to aid in establishing the identification of persons. But to make this principle applicable in a trial of any cause where the pedigree and identification of persons become an element, there should at least be some evidence than names from such records sounding identical with the names of persons contained in the evidence, that they should have been some connection of kin with the claimants to the land on either side, or if no kin, should have been connected with the title to the land in dispute. The names of persons living apart, but identical in sound, are not ipso facto evidence of pedigree, nor of the identification of persons. Nor do I think it would be proper in a rebutting case to establish that the claimants of land on the one hand or on the other were a different family of people from which the descent of the land comes. My views, therefore, are adverse to the admission of testimony that looks so remote to the party in question as the present offer; offer rejected, and bill sealed for the defendants. (Thirteenth assignment of error.)

The defendants then made a complete offer as follows: The defendants propose to prove by the exemplification of the will of Peter Gehr, a brother of John Gehr, Sr., dated the first day of May, 1763, and proved the eleventh day of June, 1763, in which he devises his estate, to each of the children of his brother John the sum of ten Pounds, two thereof shall receive payment after a year; two after two years are past; and the other three when three years are past; the residue he gives unto Andrew Gehr, the eldest son of his brother John; and

he constitutes and ordains the said Andrew Gehr executor of his will, that the family of John Gehr, Sr., consisted of seven persons.

We next propose to prove by a mortgage of the twenty-first day of November, 1757, between John Gehr, Sr., of the county of Lancaster, and Paul Gehr and Andrew Gehr, both sons of the said John Gehr, of the same place, that these are two of the sons of John Gehr, Sr.; the mortgage reciting a tract of land, with certain boundaries, containing 103 acres and allowance; the land being in Earl township and the aforesaid Lancaster county, commencing at a marked white oak in the line of John Kirkenhower's land, etc.

We propose to follow that by a deed of John Gehr and George Gehr, of Earl township, dated the twenty-first day of April, 1774, to Joseph Gehr, of Earl township, made for the purpose of severing the joint tenancy of the grantors, so that the said Joseph Gehr shall hold the one moiety for the use of John, and the other for the use of George Gehr, in consideration of five shillings; in which it is recited that one of these tracts is granted to them by John Gehr, Sr., who is represented as their father (John and George), and is the identical 103 acres of land which John Gehr, Sr., had mortgaged to Andrew and Paul; this deed also shows that it is bounded by land of Paul Gehr.

Then we propose to show by the deed of Thomas Cadwallader, dated the twelfth day of January, 1769, to Paul Gehr, of Cocalico township, for two tracts of land in said Cocalico township, containing one 120 acres, one 19 acres; and a mortgage of the date of the following day from Paul Gehr to Thomas Cadwallader for ninety pounds on this same tract of land.

And further, we propose to show by the records of assessment of Cocalico township, Lancaster county, that only one Paul Gehr is assessed for land from 1770 to 1773, inclusive; that from that time on down to 1791, there is no Paul Gehr assessed for land in Cocalico township:

Then to be followed by proof of the will of Paul Gehr, proved in 1773, to which is affixed his signature in German, and which is produced from the original records of Lancaster county as his identical will there filed, in connection with the original record of the mortgage of John Gehr, Sr., to Paul and Andrew Gehr, and the cancellation of said mortgage by Paul Gehr, the survivor of the mortgagees, to which his signature is affixed in German in the margin of the record, being the original record from the office of the recorder of deeds:

That Joseph Gehr appearing in 1774 as of Earl township, by the records of assessment in Cocalico township first ap-

[Sitler *v.* Gehr.]

pears there in 1779 as an inmate; and from thence appears as a tenant, probably up to the time he left in 1788.

To be followed further by an assignment dated the twenty-eighth day of March, 1783, of Francis Brumbach, in the county of Lancaster, and Elizabeth, his wife, she being one of the daughters of Paul Gehr, late of Cocalico township, deceased, to Joseph Gehr, of Cocalico township, assigning to Joseph Gehr her share and proportion in the real and personal estate of the said Paul Gehr, deceased; showing that in 1783, Joseph Gehr lived in Cocalico township, and from the daughter of the decedent Paul Gehr, purchased her interest in the estate.

This as tending to show a complete pedigree of the Gehr family of Lancaster county.

It is also proposed to prove that the person who signed the will of Paul Gehr, of Cocalico township, dated 1773, and the Paul Gehr who signed the cancellation in the mortgage in Earl township, which was dated in 1757, given to him and his brother Andrew by John Gehr, Sr., cancelled in 1772, are the same person.

The deposition of the plaintiff having shown that in addition to the brothers he had, he had two sisters, one by the name of Catharine and the other Mrs. Guenther, whose first name he did not recollect, and he having also deposed that his father had brothers, Andrew, and Paul, and John, and lived on his brother Paul's land in Cocalico township, Lancaster county.

The plaintiff objects to the offer, generally, as irrelevant and incompetent; and particularly, 1st, because Peter Gehr, who made the will, is not shown to be a brother of the John Gehr described in the deeds; 2d, because Joseph Gehr, described in the deeds, is not shown to be a brother of any other persons named in the deeds; 3d, because none of the persons named in the deeds, or will, or tax list, are identified as the persons of the same name named by the plaintiff, or any of the plaintiff's witnesses; 4th, because absence of a name from a tax list is no competent evidence that such a person did not reside in the district; 5th, because expert evidence is incompetent to identify the signatures to the will and the satisfaction of the mortgage by comparison.

THE COURT. This offer is overruled, for the reasons given in our last bill of exceptions; bill sealed for defendants. (Fourteenth assignment of error.)

The court in its charge to the jury said, inter alia: "There is no witness that contradicts any of the evidence that is given on the part of the plaintiff that is material to the issue, so far

[Sitler *v.* Gehr.]

as I now recollect. All the testimony remains without conflict, so far as I know. There is no impeaching evidence. There is no witness here that is impeached for truth and veracity. The witnesses all stand before you as witnesses in the usual and ordinary case without contradiction and without impeachment. (Fifteenth assignment of error.)

"Solomon Gehr testified to what he heard from John, a son of Jacob. . . . . . He gave the declarations of his grandmother and cousin John, and then talks specially of the declarations of John that he made with reference, who live down here, and to Balser Geehr, with whom he said he lived, and who was the uncle of Baltzer Gehr up there. . . . . . The parties from Crawford cannot give that common ancestor, and the nearest that they come is the evidence that mentions what John said about the time he lived with Balser in Berks county." (Sixteenth assignment of error.)

Verdict for the plaintiff for one-third of the land described in the writ, and judgment accordingly, whereupon the defendants took this writ of error, assigning for error the several rulings of the court upon the plaintiff's and defendants' offers of evidence, as hereinbefore set forth, and the portions of the charge above quoted.

*A. G. & H. D. Green* (with them *Wharton Morris* and *Wm. H. Livingood*), for plaintiffs in error.—The question is whether the declarations of a party are competent evidence in a question of pedigree, unless the declarant is connected with the family in reference to which the declarations are offered. The declarations of a deceased person, who is related to a family by marriage, are admissible to prove family pedigree, including those who compose the family. But before such declarations can be admitted the relationship of the declarant to the family must be proved by other evidence than his declarations: Wharton on Evidence, 217 and 218. Such relationship must be proved aliunde, and must be established by extrinsic proof and not out of the declaration itself: Phillips on Evidence, 275; Taylor on Evidence, vol. 1, § 576; Doe dem. Futter *v.* Randall, 2 M. & P., 24. It is a safe and necessary precaution to require that before a declaration can be received the relationship of the declarant with the family be established by some proof, independent of the declaration itself: Attorney-General *v.* Kohler, 9 H. L. Cases, 654. It is submitted that there is no evidence here of relationship between the family of Geehr, of Berks county, and that of Gehr of Crawford county. The sole reliance of the other side is upon the unsupported declarations of the plaintiff's mother. The declarant, who was the plaintiff, was not only not recognized

as a member of the Berks county family, but he was totally unknown to them. The mere identity of name is but an accident, and it is very significant that there is a difference in the way of spelling it. No better evidence than that offered in Dr. Knoske's register of births, burials, etc., was possible. The entries were made at a remote period, by a disinterested person, when no motive to falsify could exist, and they were preserved in the public records of the church. "The registry now kept, or which shall hereafter be kept, by any religious society in their respective meeting book or books, of any marriage, birth, or burial within their province or territories, shall be held good and authentic, and shall be allowed on all occasions whatever:" Act of 1700, § 1, 1 Sm. Laws, 20. But independent of statutory prescriptions the entries regularly made in his own books by a clergyman or by the recording officer of a parish, or the proper functionary of a religious society, are, after his decease, evidence of all facts which it was his duty officially to enter: Wharton on Evidence, 654. The law in regard to proof of identity is well settled and fully warranted the admission of the mortgage. Identity of name is prima facie evidence of personal identity: McConeghy *v.* Kirk, 18 P. F. S., 200; Goodell *v.* Hibbard, 32 Mich., 48.

*Isaac Hiester* (with him *Humes & Frey* and *John F. Smith*), for defendant in error.—While it is admitted that the essential rules in regard to the admissibility of declarations as to pedigree have been complied with, i. e. (1) That the declarations be made *ante motam litem;* (2) That the declarant be dead; (3) That the declarant be related to the family about which the declarations are made; yet it is contended that the declarant must be shown by evidence aliunde to be related to the particular branch of the family in which the title to the property was vested. The long line of authorities cited on the other side do not sustain their proposition. It is a well established rule that it is not necessary to prove the declarant to be connected with both branches of the family touching which his declaration is tendered. It is sufficient if he is connected with the family, and that connection once proved, his declarations are admitted upon questions regarding the family. This rule is laid down in, and this case is governed by, Monkton *v.* Attorney-General, 2 Rus. & M., 157. Admitting that the book referred to was such an official register as is contemplated by the Act of 1700, it is obviously only to be allowed as evidence of the matters referred to in the Act, that is, marriages, births, and burials. Such registers are not in general evidence of any fact not required to be recorded there, and which did not occur in the presence of the registering officer:

2 Phillips on Evidence, 280. The onus is on the other side to prove identity: Sailor *v.* Hertzogg, 2 Barr, 182.

Identity of name is ordinarily, but not always, prima facie evidence of personal identity: Sewell *v.* Evans, 4 A. & E., N. s., 626. Such identity must be proven by evidence aliunde. The two ways of spelling the name in this case are within the principle of idem sonans, and not nearly as dissimilar as that of Troutback and Troutbeck, in Monkton *v.* Attorney-General, supra.

Mr. Justice PAXSON delivered the opinion of the court, April 14, 1884.

The first five assignments of error may be considered together. They raise the question of the admissibility of the declarations of Anna Maria Gehr and John Gehr upon a question of pedigree. The purpose of offering said declarations was to establish relationship between the plaintiff and Balser Geehr, of Berks county. The evidence was objected to because it was not shown aliunde that the declarants were of the family of the Berks county Balser Geehr. The evidence was admitted and bill sealed for the defendants.

The rules of evidence applicable to pedigree cases are: 1. That the statements must be made *ante litem motam*. 2. Declarant must be dead. And 3. But a prior condition to both these is, that it should be proved by some source of evidence independent of the statement itself, that the person making the statement is related to the family about which he speaks: Smith *v.* Tebbitt, L. R., 1 P. & D., 354.

It was not denied that the first two conditions had been fulfilled. Neither was it questioned that the declarants were shown by evidence dehors the declaration to be related to the family of Joseph Gehr, the ancestor of the plaintiff, but it was contended that the declarants must be shown by evidence aliunde to be related to Balser Geehr, of Berks county; in other words, to the person last seised of the estate, or his particular branch of the family. To state the question in another form: the declarants were Anna Maria Gehr and John Gehr; the plaintiffs' ancestor was Joseph Gehr; the deceased ancestor was Balser Geehr, of Berks county. It was not denied that the declarants were of the family of Joseph Gehr, and it was attempted to show by their declarations that the above named Joseph Gehr and Balser Geehr were related to each. The question was, whether sufficient ground had been laid for such declarations.

The plaintiffs in error contend, not only that the declarants must be shown by evidence aliunde to be related to the family as to which the declarations were made, but also that they

[Sitler v. Gehr.]

must also be thus shown to be related to the person who died seised. The first part of this proposition is undoubtedly true under all the authorities; the latter portion of it is not so clear. I have carefully examined all the authorities cited on both sides upon this point, and many others to which our attention was not called upon the argument, and although there is some conflict in the cases the weight of authority seems to be that while a declarant must be shown by evidence aliunde to belong to the family, it does not appear to be necessary to show that he belongs to the same branch of it. In Vowles v. Young, 13 Vesey, 147, it was held that the declarations of a deceased husband concerning the descent or pedigree of his wife are admissible. And in Jewell v. Jewell, 1 Howard, 219, that the declarations of a deceased husband of one of the plaintiffs claiming as heir of her father, that his wife was not married to her father, were admitted.

It would seem, however, that the declarations of a husband in regard to his wife's family, or of a wife in regard to her husband's, rest upon substantially the same principles as those of a relation by blood, and these cases do not throw much light upon the question we are considering.

Doe dem. Jenkins v. Davies, 59 E. C. L. R., 314, cited by plaintiff in error, was an action of ejectment, and the vital question in the case was, whether Elizabeth Jenkins was legitimate; if she was, it was admitted the verdict must be for defendant. After the plaintiff had offered evidence to show that E. J. was not legitimate, an attorney produced a certificate of the marriage of Eleanor Diller to John Davies, the father of E. J., and stated that he had received it from E. J. when he was inquiring into the pedigree. He was then asked whether E. J. made any statement regarding her mother's marriage; the question was objected to upon various grounds: "1. That she was not yet conclusively proved to be a member of the family; and 2. That the question whether E. J. was a member of the family was in fact the issue for the jury, and if she was decided to be legitimate her declarations to prove her legitimacy were superfluous. It was held by Lord DEN-MAN, in regard to the first objection, that it was the duty of the judge to decide whether it was proved to him, and he decided that it was; and as to the second objection, he answered it by saying: "Neither the admissibility nor the effect of the evidence is altered by the accident that the fact which is for the judge as a condition precedent is the same fact which is for the jury in the issue." Here the declarant was not shown aliunde to be a member of the family; her declaration tended to make her so.

Blackburn v. Crawfords, 3 Wall., 185, also cited by plaintiffs,

9 OUTERBRIDGE.—38.

in error, does not sustain their contention. In this case the question was, whether Dr. Crawford had been married to Elizabeth Taylor. The plaintiffs claimed to be his nieces and nephews. To prove this relationship they offered the declaration of one Sarah Evans, who was a sister of Elizabeth Taylor. The evidence was held incompetent because she did not belong to the family. The question was, who were Dr. Crawford's heirs. It was said by Mr. Justice SWAYNE, in delivering the opinion of the court: "If it had been proved by independent testimony that Sarah Evans was related by blood to any branch of the family of David Crawford, and her declaration had been offered to prove the relationship of another person claiming or claimed to belong also to that family, this case, Monkton *v.* Attorney-General, 2 Rus. & M., 157, would have been in point. But this declaration of Sarah Evans offered to prove that her sister was connected by marriage with a member of that family, was neither within the principle nor the language of that authority."

Monkton *v.* The Attorney-General, referred to by Justice SWAYNE, will be commented upon later in this opinion.

Attorney-General *v.* Kohler, House of Lords' Cases, vol. 9, page 653, we regard as authority against the position assumed by the plaintiffs. There the issue was the right of succession to the estate of one George Keylor, an officer of artillery, who died intestate. The claims of the respondents depended upon their establishing the identity of the intestate with one George Frederick Koehler, which they offered to do by the declarations of Johann Jacob Koehler, an uncle of George Frederick Koehler. It having been established that the declarant was the uncle of George Frederick Koehler, his declarations were admitted as to the pedigree of George Frederick Koehler and the events of his early life, tracing him into the artillery service and identifying him with George Keylor, the intestate. It will be noticed in this case that there was no evidence *aliunde* to show that Johann Jacob Koehler, the declarant, was related to George Keylor, the artilleryman. It was shown, however, that he belonged to a branch of the family.

In Chapman *v.* Chapman, 2 Conn., 347, the witness did not name the person whose declaration he had sworn to, nor did it even appear that the declarant was dead. · It was properly held that the evidence was inadmissible.

In Davies *v.* Morgan, 1 Crompton & Jervis, 587, it was ruled that declarations of deceased corporators were evidence of a custom to exclude foreigners. But it was not shown that the declarant was a member of the corporation. In Doe *v.* Randall, 2 M. & P., 20, it was held that declarations of a party connected by marriage are a missible. Casey *v.* O'Shaunessy,

7 Jurist, 1140, was an attempt to prove declarations of a Catholic priest as to the legitimacy of the parties. It was not contended that he was related to any of the parties, and his declarations were only to the effect that the parties had always been reputed to be husband and wife in his parish. In Johnson v. Lawson, 2 Bing., 86, it was held that declarations of servants and intimate acquaintances are not admissible evidence in questions of pedigree. Crease v. Barrett, 1 C. M. & R. Exch. R., 919, involved a question of custom, in which it was held that " declarations of a deceased lord of the manor as to the extent of his rights over the wastes of a manor are not admissible; *aliter* if spoken of the extent of the waste only." In Jackson v. Browner, 18 Johns, 37, the witnesses were not connected with the family and had no personal knowledge of the fact of which they spoke, and did not derive their information from persons connected with the family. Waldron v. Tuttle, 4 N. H., 371, merely confines the rule to declarations of deceased persons who had no interest and who were relatives. Gregory v. Baugh, 4 Randolph, 611, is principally a review of all the laws concerning Indian slavery in the State of Virginia, and it was held that in questions of freedom, evidence that there had been a belief in the neighborhood, more than fifty or sixty years before, that the female ancestor of the plaintiff was entitled to her freedom, was not admissible. Whitelocke v. Baker, 13 Vesey, 514, was a case of partition, and it was merely ruled that the tradition must be from persons having such a connection with the party to whom it relates that it is natural and likely from their domestic habits and connections that they are speaking the truth, and that they could not be mistaken.

Many of the above authorities were not cited by the plaintiffs in error. Most of them are, however, referred to in the authorities they rely upon, and I have gone over them, at the risk of being tedious, in order to ascertain just what they decide. It will be seen that those of them which bear upon this question at all do not go beyond the admitted principle that before declarations of deceased persons can be received in questions of pedigree, the declarant must be shown *aliunde* to be related to some branch of the family as to which the declarations are offered. The whole question is thus summed up by Mr. Wharton in his work on Evidence, page 216: " Declarations as to a family in order to be received must emanate from deceased persons connected with such family by blood or marriage." The same rule is laid down in most of the approved text books. See Phillips on Ev., § 275; Taylor on Ev., 576. The last case to which I shall refer is that of Monkton v. Attorney-General, 2 Rus. & M., 157, where it was

said by Lord BROUGHAM: "I entirely agree, that in order to admit hearsay evidence in pedigree, you must by evidence *dehors* the declarations connect the person making them with the family.    But I cannot go the length of holding that you must prove him to be connected with both the branches of the family, touching which his declaration is tendered.    That he is connected with the family is sufficient; and that connection once proved, his declarations are then let in upon questions touching that family; not declarations of details which would not be evidence, but declarations of the nature of pedigree; that is to say, of who was related to whom, by what links the relationship was made out, whether it was a relationship of consanguinity or of affinity only, when the parties died, or whether they are actually dead; everything in short, which is, strictly speaking, matter of pedigree, may be proved as matter relating to the condition of the family, by the declarations of deceased persons, who, by evidence *dehors* those declarations, have been previously connected with the family respecting which their declarations are tendered.    To say that you cannot receive in evidence the declarations of A., who is proved to be a relation by blood of B., touching the relationship of B. with C., unless you have first connected him also by evidence. *dehors* his declaration with C., is a proposition which has no warrant either upon the principle upon which hearsay is let in, or in the decided cases; and it plainly involves this absurdity that if, in order to connect B. with C., I am first to prove that A. is connected with B., and then to superadd the proof that he is connected with C., I do a thing which is vain and superfluous, for then the declaration is used to prove the very fact which I have already established; inasmuch as it is not more true that things which are equal to the same thing are equal to one another, than that persons related by blood to the same individual are more or less related by blood to each other.    It is clear, both upon principle and from total want of any contrary authority in adjudged cases, or in the *dicta* of judges or text writers, that the argument fails entirely, which would limit the rule respecting evidence of that description to a greater extent than by requiring you to connect with the family, by matter *dehors* the declaration itself, the party whose declaration you receive."

This case was much relied upon by the defendant in error, and the facts certainly are strikingly similar to those of the case in hand.    The decedent, Samuel Troutback, died at Madras in 1785.    After reciting in his will that he had no relation or kindred alive to his knowledge or belief, having outlived them all, he gave " unto Mr. John Troutbeck, surgeon, late of the ship Speke, in the English East India Com-

pany's service, the sum of five gold star pagodas . . . . . as a person nearly of the same name with Troutback, though I solemnly believe and declare that the said John Troutbeck is not in any way related to me, or of the same family or kindred with me, and I disclaim all relationship with him or to him." The testator then proceeded to dispose of his property by charitable bequests which were void. On the appeal the main question was how far the vice-chancellor was right in rejecting from his consideration, as evidence of the relationship between the testator and the claimants, certain documents purporting to be a genealogical narrative and pedigree of the Troutbeck family. These papers were in the handwriting of John Troutbeck (the surgeon mentioned as legatee in the will), and were found among his papers at the time of his death, which occurred in 1792. The result of the narrative and pedigree was that George, the narrator's father, and Samuel, the testator, who died at Madras, were descended from the same grandfather, and were therefore first cousins. There was no difficulty in connecting the claimants and the narrator with George of Riding; and the testator was distinctly shown to be the son of Samuel Troutback of Wapping. The difficulty lay in connecting George with Samuel, and this was fully made out by the narrative or pedigree referred to, which was held to be admissible for that purpose. It was to these facts that Lord BROUGHAM applied the language I have cited from his opinion, and the case shows very satisfactorily that while a declarant must be connected with the family—that is, with some branch of it—yet, when that connection is proved, the relationship between different members of the family may be shown by his declarations, or, as is stated in the syllabus to that case: "Where in a pedigree case the object is to connect A. with C., after proving that B., a deceased person, was related to A., it is competent to give in evidence declarations by B., in which he claimed relationship with C."

We now return to the question of the competency of the declarations in this case. We have already seen that the declarants were related to the plaintiff's ancestor. They were therefore of his family. The plaintiff's name was Baltzer Gehr, and the question was whether he was related to the Balser Geehr of Berks county. The deposition of the plaintiff, taken after he was one hundred years old, was read upon the trial below, and he testified that he was named after Balser Geehr of Berks county, and that the said Balser Geehr was his uncle, a brother of his father. It is true that his knowledge of this relationship was derived from his mother. He said: "About his being my uncle, my mother told me that she always called him my uncle; that's what made me know."

Was this sufficient to justify the learned judge in admitting the declarations?

It is to be observed, in the first place, the evidence was to the court, not to the jury. It is the province of the court to decide whether a sufficient connection had been established to permit the declaration to go to the jury. As was said in Doe *v.* Jenkins (supra), in a similar case: "It was the duty of the judge to decide whether it was proved to him. There are conditions precedent which are required to be fulfilled before evidence is admissible for the jury. Thus, an oath or its equivalent, and competency, are conditions precedent to admitting *viva voce* evidence ; and apprehension of immediate death to admitting evidence of dying declarations ; and search to secondary evidence of lost writings ; and so is consanguinity or affinity in the declarant to declarations of deceased relatives. The judge alone has to decide whether the condition has been fulfilled. If proof is by witnesses, he must decide upon their credibility. If counter evidence is offered, he must receive it before he decides, and he has no right to ask the opinion of the jury on the fact as a condition precedent." See Bartlett *v.* Smith, 11 M. & W., 483.

The learned Judge below was satisfied and received the evidence. We cannot say he was wrong. The plaintiff was a competent witness, made so by law, and his testimony, as to his relationship with Balser Geehr, of Berks County, was properly received. It is true his information was derived from his mother, and was to that extent hearsay. But a large proportion of the knowledge which every intelligent man has is derived from hearsay. Indeed we scarcely realize how little we actually know from our own observation and investigation. We learn the truths of history, the secrets of science and our knowledge of the world generally, from what we have read, or from what others have told us. What does a man know of his deceased ancestors but what he has learned from his immediate relatives ? How was the plaintiff, who had never seen Balser Geehr, of Berks County, to know that the latter was his uncle except from his mother? It is in just such cases that the strict rules of evidence are relaxed as regards hearsay. If it were otherwise pedigree could not be proved at all in many cases, and in one sense it is primary not secondary evidence. The law upon this point is clearly stated in 1 Wharton's Evidence, § 201: "Pedigree, from the nature of things, is open to proof by hearsay in respect to all family incidents, as to which no living witness can be found. If what has been handed down in families cannot be in this way proved, pedigree could not, in most cases, be proved at all. Nor is such tradition, in its best sense, open to the objections applicable to hearsay.

[Sitler *v.* Gehr.]

A., called as a witness to pedigree, may indeed say B. told me this. But pedigree testimony usually takes another shape. It is not, 'B. told this,' but 'such was the understanding of the family.' The constitution of a family may become a matter of immediate perception. A., B., C., and D., are brought up as brothers in the same household; if any one says to A., 'B. is your brother,' A. would not regard such an announcement as any more disclosing a fact to him, than would the announcement to him that he is a human being. That B. is his brother is one of the conditions of his family existence. He fits into a family of which B. is a member in the same way that one stone fits into an arch of which another stone is part. The position of one presupposes the position of the other. As to remote relations the same reasoning applies though with diminished force. The recognition of such relations forms part of a family atmosphere; the existence of such relationship constitutes the family. A family, in this sense, is an object of immediate instead of mediate perception. To say that A. is a brother, or a cousin or an uncle, or an aunt, is not hearsay, but primary evidence. But recognition of pedigree is not limited to such conditions. Even where there is no family *consensus* to be appealed to, what is said by one member of the family to another as to pedigree may be received to prove such pedigree. Hence it is admissible for A. to prove, with the limitations hereafter expressed, what was told him by deceased relatives as to family relations."

We cannot say, therefore, that the plaintiff was an incompetent witness to prove his relationship to the Balser Gehr, of Berks County, nor that his testimony was incompetent from the fact that his knowledge upon that subject was derived from his deceased mother. She always told him that Balser Geehr was his uncle; it was a part of their family history; one of their family traditions, furnished by one who had the means of knowledge and no possible motive to falsify, so far as appears in the case. When the plaintiff testified that Balser Geehr, of Berks County, was his uncle, he testified to a fact. The evidence was primary, not secondary. This puts at rest all question of the declarations of Anna Maria Gehr and John Gehr. They are shown to belong to a branch of the Gehr family and from their position as such likely to have had accurate information of the matters to which their declarations referred. The learned Judge below thought the connection between the families sufficiently established to admit the evidence, and in this we see no error.

The sixth assignment of error does not require an extended discussion. The evidence rejected does not come within any recognized rule in regard to pedigree. No declarations of any

deceased person were offered. It was simply a conversation between two living persons in regard to the Gehr family. Even the conversation was not offered, but merely the conclusion which they drew from it. The offer was properly rejected.

The seventh and eighth assignments relate to the rejection by the Court of "the original record of the Kutztown Evangelical Lutheran Church, commencing in 1810, for the purpose of showing the burial record of Hannah Bast, and the names of her parents, place of birth, dates of birth and death, which was the usual way of keeping the record." Objection was made to this because it was not a church record, but merely a private book kept by the pastor Rev. John Knoske, claimed by him as his private property, and containing a minute of his acts outside as well as inside of the church.

The further objection was made that the record was not evidence of anything except the death and burial of the person mentioned and the time and place thereof.

The learned Judge held that the book in question was a church registry for marriages, deaths, and burials, that it was intended to be kept, and possibly was kept, according to the requirements of the Act of 1800; that it would be evidence to show the deaths of Mary Eva Zimmerman and Hannah Bast, but that for the other purposes offered it was incompetent. Without discussing the character of the book, we are of opinion it was properly rejected. It was not alleged that the time of the death of these ladies was material to the issue, on the contrary, the manifest object of the offer was to prove that Hannah Bast was the daughter of Conrad Geehr and Anna Maria his wife, and to show when and where she was born. This burial list was competent to show the death and burial of these ladies, but what the pastor put down in the book as to their parentage, and the time and place of their birth, was incompetent, for the plain reason that it was no part of his duty to make such entries. Such registers are not, in general, evidence of any fact not required to be recorded in them, and which did not occur in the presence of the registering officer: Phillips on Evidence, vol. ii., *280. It was held in Clark *v.* Trinity Church, 5 W. & S., 266, that "an entry in 1811, in the handwriting of the pastor of a church in a book kept in the church as a registry of baptisms and births, the object of which entry was to register the baptism of a person and not his birth, and in which the time of the birth is introduced merely by way of description, is not evidence of the date of the birth."

The rule is thus stated by Mr. Greenleaf in his work on Evidence, vol. i., § 493: " A parish register is evidence only

of the time of the marriage, and of its celebration *de facto;* for these are the only facts necessary within the knowledge of the person making the entry.  So a register of baptism, taken by itself, is evidence only of that fact, though, if the child were proved *aliunde* to have been then very young, it might afford presumptive evidence that it was born in the same parish.  Neither is the mention of the child's age, in the register of christenings, any evidence of the day of his birth, to support a plea of infancy.  In all these and similar cases, the register is no proof of the identity of the parties there named, with the parties in controversy, but the fact of identity must be established by other evidence.  It is also necessary in all these cases that the register be one which the law requires should be kept, and that it be kept in the manner required by law."  This principle is recognized in most of leading text-books and numerous decisions in England and in this country. It is sufficient to refer to Rex *v.* Clapham, 4 C. & P., 29; Burghart *v.* Angerstein, 6 Id., 690; Williams *v.* Lloyd, 39 E. C. L. R., 595; Whitcher *v.* McLaughlin, 115 Mass., 168; Blackburn *v.* Crawfords, 3 Wall., 189.

We are unable to see any error in the rejection of the mortgage referred to in the ninth asssignment.   The object of this offer was to show that the Conrad Geehr mentioned by the defendants' witnesses as the father of the Geehrs of Berks county resided in Philadelphia as early as 1739, and that the family of Geehr in Berks county were entirely different from the Lancaster county family of the same name, from whom the plaintiff was descended.  The obvious objection to this evidence was that none of the defendants' witnesses speaks of any Conrad Geehr residing at Germantown, and the recital in the mortgage in no way connected the Conrad Geehr, who was the mortgagor, with the Conrad Geehr mentioned by the witnesses.  The bare fact that a Conrad Geehr lived in Germantown, that he borrowed money and gave a mortgage to some one in Oley township in 1743, many years before Balser Geehr is heard of in that township, would not of itself connect that Conrad with this Balser Geehr.  Mere identity of name must be accompanied with some circumstances of time or place before we can attach any value to it as affecting rights of property.

It is true there are some authorities which hold that identity of name is *prima facie* evidence of identity of person.  So much was said by Justice SHARSWOOD in McConeghy *v.* Kirk, 18 P. F. Smith, 203.   That this is the ordinary rule may be conceded.  But it does not apply where the transaction is remote.   The true rule is believed to be that laid down by Chief Justice GIBSON in Sailor *v.* Hertzogg, 2 Barr, 182,

[Sitler *v.* Gehr.]

where he says: "Identity of name is ordinarily, but not always, *prima facie* evidence of personal identity. The authorities on the subject may be consulted in Sewell *v.* Evans, 4 Ad. & Ellis, N. S., 626, from which Lord DENHAM and other judges of the Queen's Bench, concluded that identity of name is something from which an inference may be drawn, unless the name were a very common one or the transaction remote; and the reason given for casting the onus on the party who denies is, that disproof can be readily had by calling the person whose identity is denied into court. The name in this instance is not a very common one; but after more than a quarter of a century there ought certainly to be some preliminary evidence, however small." The soundness of this rule cannot be successfully questioned. It would work great injustice if rights of property, after a great length of time, were allowed to depend upon mere identity of name. A *prima facie* case thus submitted to a jury might be extremely difficult, if not impossible, to disprove. I know of no case in which mere identity of name has been held sufficient after the great lapse of time which exists here.

The assignments from the tenth to the fourteenth inclusive allege error in the exclusion of a series of voluminous documents from the public records of Lancaster county. To go over these papers in detail would extend this opinion to an inconvenient length, and would serve no good purpose. The object of the offers, as I understand them, was to show the pedigree of the plaintiff's family, and that he was not connected with the Geehr family of Berks county. They show recitals in wills, deeds, mortgages, etc. There are also copies of assessments and other papers. They are, perhaps, the equivalent of the declarations of deceased persons, but there is nothing to connect them, or either of them, with the Baltzer Gehr who is the plaintiff in this suit, or with the Berks county family of Geehr. Hence the objections made by the defendants to the admission of the declarations of Anna Maria Gehr and John Gehr, and which have already been considered, apply with far greater force to these papers. Regarding them as declarations, the declarants are not shown *aliunde* to belong to either branch of the family. We are of opinion that these records were properly excluded.

There remain but the fifteenth and sixteenth assignments, in which error is assigned to the charge of the court in some brief comments made by the learned judge upon the evidence. If not entirely accurate, they disclose no such error as would justify a reversal.

Judgment affirmed.

[Sitler v. Gehr.]

May 16, 1884. The Court (Paxson, J.).

A motion has been made for a re-argument in the above case based upon our ruling in regard to the exclusion of the Lancaster county records by the court. The impression appears to prevail that because we dismissed the assignments of error relating to this question without an extended discussion, we had not examined it with care, or were misled upon the facts. The first assumption is certainly incorrect. I examined this branch of the case with all the more care from the fact that we were not aided by an extended oral argument. The paper books, however, supplied us with a very careful printed argument, so that the loss of an oral argument was not so important as it may seem to the learned counsel for the plaintiff in error. That the point was not more fully discussed in the opinion was owing to the fact that it had already been extended to what I feared was an unreasonable length in discussing the more important questions of the cause.

A careful re-examination and study of the case has failed to satisfy us that we were misled either upon the facts or the law.

The records referred to were offered to rebut the testimony of the plaintiff and to establish the pedigree of his family in Lancaster county. The plaintiff in his deposition had stated that when he was six years old (1788), his father, with his family, moved from Cocalico township, Lancaster county, where he had lived on his brother Paul's land; second, that his father's name was Joseph, and that he was the youngest of the family; and third, that his father had three brothers, Paul, Andrew and John, who lived in the same neighborhood in Lancaster county. The plaintiff did not know his grandfather's name; he never saw him, and then stated that Balser Geehr, of Berks county, was his uncle, upon information derived from his mother.

The defendants attempted to show, by the excluded records, that Joseph Gehr, the plaintiff's father, and Paul, Andrew and John Gehr, mentioned in the records of Lancaster county, were brothers; that they were the sons of John Gehr, senior, and hence could not have been the sons of Conrad Geehr, a brother of the Balser Geehr, of Berks County.

The difficulty in the way of the defendants is that there is nothing but identity of name to connect the Gehrs named in the records with the family of the plaintiff. This will not do as to people who died a hundred years ago. The reason and the authority for this position were given in the opinion already filed, and need not be repeated. Not only is there no proof *aliunde* to connect them, but there is evidence as to Paul and Andrew, at least, which makes their identity more than doubtful. Indeed, it seems hardly possible that they are

[Transue *v.* Sell.]

the Paul and Andrew referred to by the plaintiff. To show the competency of the evidence, the argument was made that the plaintiff had spoken of his father living on his brother Paul's land in Cocalico township, Lancaster county. But we must remember that the plaintiff was born in 1782; he left Lancaster county in 1788, when about six years old, and the records show that the Paul Gehr named therein died in 1773, which was five years before the 'plaintiff was born. And as to Andrew Gehr the case was still stronger, for the plaintiff testified to having seen his father's brother Andrew, while the Andrew Gehr of the records must have died prior to 1772, according to the records themselves. It is not correct, therefore, to say, that there was, proof *aliunde* to connect these Gehrs with the plaintiff, and that the plaintiff's own deposition, furnishes such proof. There is really nothing but identity of name, and even if this were some evidence it would be too weak and inconclusive to base a verdict upon. Unless the plaintiff's case is a fabrication, and the testimony false as to the declarations of the deceased members of his family, his relationship to Balser Geehr, of Berks county, was established. There is nothing in the case to indicate such a fabrication, and if the evidence rejected had been admitted, it would not be sufficient to justify a jury in coming to such a conclusion.

The rejected records do not contradict the plaintiff's testimony. As a pedigree of his family, it rests upon a number of circumstances, each dependent upon the other. With the essential links relating to Paul and Andrew Gehr broken, the whole superstructure crumbles.

We see no sufficient reason to order a re-argument, and the motion therefore is refused.