## Cassidy's Estate. No. 2

*Francis X. Quinn* and *Turner & Turner*, for exceptant.

*F. Raymond Heuges*, contra.

*Thomas Z. Minehart, Esq.*, Master.

LADNER, J., November 8, 1946.—From the record the following facts appear: John James Cassidy died in Philadelphia, February 17, 1941. A paper writing, alleged to be a last will, executed one week before his death, was probated. By it his entire estate, after payment of debts and funeral expenses, was bequeathed to his "cousin, Mae V. Shanz", whom he also appointed executrix.

Subsequently, the Secretary of Revenue of the Commonwealth, under the belief that decedent left no next of kin or heirs to survive him, appointed an escheator who appealed from the probate of the will. The petition sur appeal avers that decedent at the time of the execution of the alleged will lacked testamentary capacity; also that the writing was procured by undue influence, duress and restraint practiced upon decedent by the said Mae V. Schanz. It avers also that decedent had been an inmate of the State Hospital for Mental Diseases at Byberry six days before the execution of the alleged will.

Before the appeal from the probate was heard, Mae V. Schanz, hereinafter called claimant, filed a petition to dismiss the appeal, averring that the escheator had no standing to appeal in that she and her mother were the next of kin to decedent, and asked a preliminary determination of that question. The escheator filed an answer denying the kinship of claimant and her mother, to which issue was joined by replication, and the issue so raised was referred to Thomas Z. Minehart as master.

The master filed a first report recommending that the petition be dismissed, to which proposed action exceptions were filed of which two were sustained by this court. (See Cassidy's Estate, 54 D. & C. 647). We there ruled that the master erred in excluding testimony of witnesses of declarations made by decedent himself whose relationship is at issue, concerning his next of kin. But we referred the case back to the mas-

ter because, as stated, "the master . . . had the advantage of seeing and hearing these witnesses testify and in order to enable him to pass on the credibility of this testimony and reconsider his recommendation accordingly."

The master has done so, and in his second report states that the testimony of these witnesses was frank and honest and "so far as frankness and clearness of recollection of these witnesses is concerned, the master believes them entirely credible", but nevertheless the master concludes that while the testimony of these two witnesses, viz., James Brennan and Bernard Brennan, is admissible and credible, it still was not sufficient even with the other testimony to prove the kinship of claimants. To this second report counsel for claimant filed three exceptions which were considered by the master in his second supplemental report, found to be without merit, and recommends their dismissal. These exceptions are now before us for consideration.

These exceptions raise the single question whether on the whole record the evidence was sufficient to establish the kinship of claimant to John James Cassidy, decedent. Four witnesses testified before the master, namely, Anna Brown (mother of claimant) ; claimant; James Brennan and Bernard Brennan. No family records, birth certificates or documentary evidence of any kind was presented in evidence, but as the master expressly says he does not question the credibility of any of these witnesses, the sole point to be determined is whether the testimony adduced is sufficient to meet the test laid down in Link's Estate (No. 1), 319 Pa. 513, and Sitler et al. v. Gehr, 105 Pa. 577.

Mrs. Brown, after testifying that she was the mother of Mae V. Schanz, claimant, testified that she knew John James Cassidy, decedent, from the time he was six years old; knew his mother who, she said, was her cousin. She testified to a pedigree which the master correctly set forth in diagrammatic form and which

will be found annexed to his first report, and marked Exhibit A. According to the diagram thus made, it is shown that Mae V. Schanz and decedent, John James Cassidy, were descended from the same common ancestor, their great-grandfather, Matthew Fogarty; that Matthew Fogarty had, inter alia, two children: Bridget and Thomas, both born in County Carlo, Ireland; that claimant is descended from Bridget, who married William Dorsey. Their daughter, Annie (married to Charles Brown), is the witness and the mother of claimant; that John James Cassidy, decedent, whose relationship is in issue, was descended through Thomas Fogarty, whose daughter, Mariah Cassidy, nee Fogarty (born in County Cork), was said decedent's mother.

Claimant's testimony was substantially to the same effect as that of her mother. Commenting on this testimony, the master properly held that the applicable principles are those laid down in Sitler et al. v. Gehr, 105 Pa. 577, viz., that before declarations of deceased persons can establish a pedigree it must be shown that they were made: (1) ante litem motam; (2) that declarant was dead; (3) that it must be shown by independent evidence that declarant was related to the family of which he speaks. The master ruled that the first two conditions were fulfilled but not the last.

Counsel for claimant argues that the third condition is fulfilled by the testimony of the Brennans. Whether it is, is the real question to be decided by us. The relevant testimony of these witnesses was that they were intimate friends of decedent, John James Cassidy, for some 21 years; that they spent a great deal of time with Cassidy, frequently visited him and with him claimant and her mother, whom Cassidy repeatedly referred to as his cousins. James Brennan testified further on cross-examination that Cassidy told him that claimant was his only living *blood* relative.

The master, in his second report, holds this testimony insufficient to establish the relationship of claimant to decedent. He points out that the word "cousin" is popularly used with so great deal of looseness as to be equivocal. He relies largely on Link's Estate (No. 1), 319 Pa. 513; Link's Estate (No. 2), 319 Pa. 544, in reaching his conclusion. We, however, do not regard those cases as controlling here for several reasons. In Link's Estate (No. 1) the court below refused to credit the testimony of the witnesses, who testified, as reliable. Claimants were heirs who lived in Germany and there was no showing that decedent was on intimate terms with them or even knew them. In Link's Estate (No. 2) claimants known as the Butler County line of claimants, rested their entire case on testimony that on several occasions claimant's ancestor (Frederick Link of Butler County) was referred to by John Link and his son, decedent, as a cousin of the elder Link.

In this case we have much more than the mere use of the word "cousin". It is supplemented by the words "blood relative" which leaves no room for doubt as to the sense in which decedent used the word. Moreover, claimant here was not a stranger to decedent but one whom he visited repeatedly in company with the witnesses. Worthy of note also is the fact that he executed a will in which claimant, whom he styled "cousin" therein, was made executrix and sole legatee. We are mindful that the Commonwealth charges that will was executed while decedent was mentally incompetent or under undue influence, but it does corroborate the fact that claimant was no stranger to decedent.

Accordingly, the exceptions are sustained and the prayer of the petition is granted. Counsel will prepare an appropriate decree dismissing the appeal from the register.