| 143 | 311 |
| 33 SC | 566 |

## MARY GEHR ET AL. v. AUSTIN FISHER ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 2, 1891—Decided October 5, 1891.

[To be reported.]

1. When a declaration as to pedigree made by a deceased person, is offered to show that A and B were related to each other by blood, it is sufficient, to lay the ground for its introduction, to show that the declarant was connected with the family of A; it is unnecessary to show by evidence dehors the declaration, that the declarant was also related to B : Sitler v. Gehr, 105 Pa. 577, reconsidered and affirmed.

2. When the question is as to particulars in the pedigree of a person of a certain name, recitals in deeds, records, and monumental inscriptions, all of them more than fifty years old, giving such particulars respecting a person of that name, are inadmissible, when there is no other evidence than mere identity of name, to show that the person mentioned in such recitals is the same whose pedigree is in question.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 50 January Term 1891, Sup. Ct.; court below, No. 98 May Term 1887, C. P.

Statement of Facts.

On April 29, 1887, Mary Gehr and others, heirs at law of Baltzer Gehr, deceased, brought ejectment against Austin Fisher and others, for the undivided one third of two hundred and thirty-one acres of land in Maxatawny township. The defendants pleaded not guilty.

In a prior action of ejectment for the same property, Baltzer Gehr, the plaintiffs' father, recovered a verdict and judgment: Sitler v. Gehr, 105 Pa. 577. The defendants in that action afterward brought ejectment against the heirs of Baltzer Gehr, who had died in the meantime, and recovered judgment therein: Gehr v. Miller, 20 W. N. 387. In each of those actions, as well as in the present, the question for determination was whether or not Baltzer Gehr was one of the heirs of Catharine Geehr, who died May 10, 1877, intestate, unmarried and without issue, seised in fee of the land in question.

At the trial, on December 2, 1889, testimony was presented substantially to the same effect as in Sitler v. Gehr, supra. Catharine Geehr's grandfather was Balser Geehr of Berks county. The plaintiffs claimed that their father, Baltzer Gehr, who was the son of Joseph .Gehr, formerly of Lancaster county and later of Crawford county, was a nephew of Balser Geehr of Berks county. If this were the fact, the plaintiffs would have title to the undivided one third of the land in dispute. To prove it, the plaintiffs made offers to show by the testimony of Baltzer Gehr,[1] Solomon Gehr,[2] and Samuel Gehr,[3] taken in the first ejectment, that the mother of Baltzer Gehr, and several other members of his family, all of whom were deceased, had made declarations, prior to the commencement of this controversy, tending to show that Balser Geehr, of Berks county, was the uncle of Baltzer Gehr of Crawford county. Each of these offers was objected to upon the ground that, before such declarations could be admitted, it must be proved by evidence aliunde, to the satisfaction of the court, that the declarant was connected with the family of Balser Geehr, of Berks county. In each instance the court overruled the objection and admitted the testimony; exceptions.[1 to 3]

Cyrus Gehr, a grandson of Baltzer Gehr, being upon the witness stand, the plaintiffs proposed to prove by the witness that he had conversations with Baltzer Gehr, now deceased, about the time of the late civil war, long before this dispute

originated, and before Kitty Geehr died, and that in those conversations the said Baltzer Gehr described to the witness his family, told him that he was named after his uncle Baltzer Geehr, a brother of his father, Joseph Gehr, who lived near the Longswamp, in Berks county, Pennsylvania, and who had been a gunsmith by trade; that at the time of the whiskey insurrection he had gone to the camp with his father and mother and his uncle Baltzer, after whom he was named; and that the said Baltzer Gehr also talked to him about his other uncles, brothers of Baltzer Geehr, of Berks county, called Philip and Samuel.

Mr. Green: The defendants object (1), on the ground that it is hearsay evidence of the real plaintiff himself in this case, and is intended to supplement Baltzer's deposition in his lifetime, notwithstanding said Baltzer Gehr testified fully in reference to his relationship in the deposition already read in evidence: (2), the testimony is generally incompetent.

By the court: We think we will admit this and give the defendant an exception.[4]

The witness then testified to the matters set out in the offer.

Among the persons whose declarations, as to the existence of a relationship between Baltzer Gehr, of Crawford county, and Balser Geehr of Berks county, were shown by the plaintiffs, was John Gehr. Solomon Gehr, of Crawford county, the witness who testified to the declarations of John Gehr, stated that this John Gehr was the father-in-law of the witness and was a son of Jacob Gehr, and a nephew of Baltzer Gehr; that he was born in 1784 and died in 1853. Asa Gehr, another witness for the plaintiffs, testified that Jacob Gehr, an uncle of the witness and a brother of Baltzer Gehr, lived in Crawford county, about twelve miles west of Meadville, and had a son named John, and testified further as follows: "Q. Did any of the other brothers of your father have a son by the name of John? A. They had. Q. Which one? A. They called him Captain John Geehr. Q. Which one of your father's brothers had a son John besides Jacob? A. Baltzer Gehr. Q. That John is living yet? A. Yes, sir."

The defendants, having called Jacob C. Geehr, who was grandson of Philip Geehr, a brother of Balser Geehr of Berks county, made the following offer:

Statement of Facts.

The defendants offer to prove by the witness that about 1846 or 1847 he visited Meadville, in Crawford county, where he remained about a year; that while there with his relatives on his mother's side, the Smull family, he became acquainted with a number of the Gehrs; that he attended the funeral of Jacob Gehr, who lived west of Meadville twelve or fourteen miles, and that while at the funeral he met John Gehr and Joseph Gehr; that John Gehr was a person between fifty and sixty years of age, whom he met and had a conversation with him in reference to their relationship; that he explained to John Gehr that he had a grandfather in Berks county by the name of Philip Geehr, and that Philip Geehr had a brother by the name of Balser Geehr, and also a brother by the name of Samuel Geehr, who died long ago; and that John Gehr, after having heard this statement of the relationship of the witness, said that their family were not related to any of those people: these are offered as declarations of John Gehr, who is deceased, and are directly contradictory of what Solomon Gehr has testified as having heard John Gehr say; it having already been testified by Asa Gehr, plaintiff's witness, that Jacob Gehr lived at that place, and had two sons, John and Joseph Gehr, and lived about twelve miles west of Meadville, and there was no other John Gehr excepting Captain John Gehr, who is still living, and a son of Baltzer Gehr, of Crawford.

Plaintiffs object, because the offer is irrelevant, immaterial and indefinite.

By the court: Objection sustained; exception.[5]

Baltzer Gehr having testified, in his deposition, that his father, Joseph Gehr, who died about 1798, aged between fifty and sixty years, was the brother of Balser Geehr, of Berks county, and was the youngest of that family, the defendants made an offer, designed to discredit his testimony by showing that his father must have been much older than Balser Geehr's sister, Mrs. Michael Croll. Joseph Kutz had testified that the grandfather of the witness was a brother of Balser Geehr, and had two sisters, Mrs. Croll and Mrs. Bast, whose first names the witness was unable to give, but whose husband's names were Michael Croll and Dewalt Bast, and that Mrs. Croll was buried at the Smoke Church near Hamburg. Jonas Kohler, another witness, had testified that he knew a certain Mrs. Croll, who

died in 1832 and was buried at the Smoke Church, now St. Paul's; that she was called Margaret Croll, and the witness had heard her called Mrs. Michael Croll. The offer of the defendants, above mentioned, was as follows:

Mr. Snyder: It having been testified by Joseph Kutz that the sister of his grandfather, Margaret Croll, wife of Michael Croll, lived in Greenwich township and was buried, as much as he knows, at the Smoke Church, near Hamburg, and it having been further testified by Jonas Kohler that Margaret Croll, wife of Michael Croll, was buried in 1832 at the church of Lebanon with the nickname of Smoke Church, now St. Paul's, the defendants propose to prove that the said Margaret Croll was buried in 1832, at a church within two miles or two miles and a half of Hamburg, and propose to give in evidence the record on the tombstone; this for the purpose of showing that she was Mrs. Margaret Croll, wife of Michael Croll, the date of her death and age, and that there is no tombstone showing any such burial at the Smoke Church.

Mr. Hiester: The plaintiffs object, (1) because the tombstone, whose inscription it is proposed to read, has not been shown to have been the tombstone of Mrs. Croll, sister of Baltzer Geehr; (2) because the evidence is irrelevant and immaterial.

By the court: Objection sustained; exception.[6]

Baltzer Gehr had testified that among the brothers of his father, Joseph Gehr, were Andrew, John and Paul; that his father lived on Paul's land in Cocalico township, Lancaster county; and that the witness did not recollect the name of his paternal grandfather. It had been shown by other testimony that the father of Balser Geehr, of Berks county, was Conrad Geehr. For the purpose of showing that Joseph Gehr and his brothers Andrew, John and Paul, were sons of John Gehr, and therefore could not be brothers of Balser Geehr, the defendants made the following offer:

Mr. Snyder: Baltzer Gehr testified that his father's name was Joseph Geehr and that he lived in Cocalico township, Lancaster county, having prior to 1782 lived on his brother Paul's land, and that his father had three brothers, Andrew, John and Paul, and two sisters, Mrs. Ginter and Catharine, the defendants now offer: (1) A mortgage dated November 21,

1757, John Geehr, Sr., of the county of Lancaster, of the one part, and Paul Geehr and Andrew Geehr, both sons of the said John Geehr, of the second part. (2) A mortgage dated November 22, 1760, from John Gehr, Jr., and George Gehr, single men, to John Gehr, Sr. (3) A deed dated January 12, 1769, from Thomas Cadwallader to Paul Gehr, conveying lands in Cocalico township, Lancaster county. (4) Deed dated April 21, 1774, from John Gehr and George Gehr, sons of John Gehr, conveying lands to Joseph Gehr. (5) Deed dated March 28, 1783, from Francis Brumbach and Elizabeth, his wife (one of the daughters of Paul Gehr), releasing her interest in lands of her father, Paul Gehr, in Cocalico township, Lancaster county, to Joseph Gehr, of Cocalico township. (6) Next, the will of Paul Gehr, dated November 1, 1773, proved November 29, 1773, directing inter alia that this farm should be rented out by his executors and the rent used to support his family until after his two youngest sons should arrive at age, and then directing an appraisement to be taken and the farm to be given them upon certain conditions. (7) The account of the executors, filed April 13, 1790, showing that the farm was rented up to 1790, and the account showing payments to Joseph Gehr, under date of 1779, for taxes and for expenses at the valuation of the real estate. (8) Deed dated March 25, 1790, from the executors of Paul Geehr and his sons, on their arrival of age, to show that from the date of 1773, to 1790, there was a farm in Cocalico township, Lancaster county, known as "Paul Gehr's farm," the title remaining in his estate. (9) Also, assessment lists to show that there was but one Paul Gehr assessed in Cocalico township, Lancaster county, from 1769, the date of the conveyance, to 1790, and that between 1773 and 1790 there is no assessment to Paul Gehr, he being dead, as shown by the will, in 1773. (10) Also, the assessment of Earl township, Lancaster county, which adjoins Cocalico township, to show that there was but one Paul Geehr in Earl township, and was, presumably, the Paul Geehr mentioned in the deeds and mortgages. (11) Also the signatures of Paul Gehr to the will and satisfaction of the mortgage, to show that they were one and the same person. (12) Also the will of Peter Gehr, dated May 1, 1763, bequeathing ten pounds to each of the children of his brother John, and designat-

Statement of Facts.

ing them as seven, and naming Andrew as the eldest son: This is for the purpose of identifying the Joseph Geehr mentioned by Baltzer Gehr as his father, and the Paul Gehr mentioned as his uncle, and to establish that the John Gehr, Andrew Gehr and Paul Gehr, mentioned as brothers of Joseph in Baltzer Gehr's deposition, were the Joseph, the Paul, the Andrew and the John Gehr referred to in the several papers offered, and that they were sons of John Gehr, Sr., of Lancaster county, and not of Conrad Geehr, who was the father of Balser Geehr, of Berks.

Mr. Hiester: Plaintiffs object to the offer as being generally irrelevant and incompetent: particularly, (1) because Peter Gehr, who made the will, is not shown to be a brother of John Gehr, described in the deeds; (2) because Joseph Gehr, described in the deeds, is not shown by any declarations to be a brother of any other person named in the deeds; (3) because none of the persons named in deeds, or will, or tax lists are identified as the persons of the same name named by any of the plaintiffs' witnesses; (4) because absence of a name from a tax list is not competent evidence that such a person did not reside in the district; (5) because the plaintiff, Baltzer Gehr, who was born in 1782, testified to having seen his father's brother Andrew, while the Andrew Gehr of the records must have died prior to 1772, according to the records themselves; (6) because the records offered do not contradict the plaintiffs' testimony, and, even if they were admitted, they would not be sufficient to justify the jury in concluding that the relationship testified to by plaintiffs' witnesses is not established.

By the court: We see no substantial difference between this offer and the one ruled upon by the Supreme Court. We, therefore, sustain the objection and give the defendant an exception.[7]

Mr. Snyder: We make the same offer with this amendment: We propose to strike out the will of Peter Gehr and add a certified copy of the records of the Orphans' Court of Lancaster county, showing that on the fifth day of March, 1776, Andrew Geehr, a minor son of Paul Geehr, late of Cocalico township, deceased, being above the age of fourteen years, came into court and selected John Geehr as his guardian: this

Arguments.

for the purpose of showing that there was an Andrew Geehr, son of Paul Geehr, of mature years when Balser Geehr was a child in that place, and as explaining who he may have meant by his uncle Andrew.

Mr. Hiester: We make the same objection as before, with the exception of that as to Peter.

By the court: We will make the same ruling; exception.[8]

The testimony being closed, the case was submitted, ERMEN-TROUT, P. J., to the jury, who returned a verdict for the plaintiffs for the one third of the land described in the writ. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal, assigning for error:

1-4. The admission of plaintiffs' offers.[1 to 4]

5-8. The refusal of defendants' offers.[5 to 8]

*Mr. George F. Baer* and *Mr. Henry D. Green* (with them *Mr. Wharton Morris*, *Mr. M. L. Montgomery*, *Mr. Jeff. Snyder* and *Mr. A. G. Green*), for the appellants:

1. The authorities are admittedly conflicting as to the application of the rule requiring evidence aliunde of the relationship of the declarant to the family, when declarations as to pedigree are offered, and we ask the court to review the decision in Sitler v. Gehr, 105 Pa. 577. Surely it ought to be necessary to show that the declarants, in the present case, belonged to some branch of the family of Balser Geehr of Berks county, and of this the mere similarity of name is no evidence. The proof does not seem to have gone beyond that in this case, and the rule as to evidence aliunde has virtually been refined out of existence. Aside from this consideration, the declarations of Baltzer Gehr himself should not have been received. It must be recollected that hearsay evidence, in cases of pedigree, is admissible only ex necessitate rei, and as Baltzer Gehr had himself testified and told what he knew, no such necessity existed for admitting his declarations in this instance.

2. An offer to prove by Jacob C. Geehr, declarations of John Gehr, inconsistent with his declaration as testified to by Solomon Gehr, was rejected in Sitler v. Gehr, supra, for reasons which cannot apply to the similar offer in the present case. That the declarations thus offered were directly contradictory of the declarations given in evidence by the plaintiffs is clear,

and the offer was admissible if there was evidence that the different declarations were made by the same person. Upon this point we have more than mere identity in name. We have a correspondence in age; as, according to Solomon Gehr's testimony, John Gehr was about sixty-three years old, and we proposed to show that the John Gehr, deceased, whose declarations we offered, was about fifty or sixty years of age. Again, we showed that John Gehr was a son of Jacob Gehr, who lived twelve miles west of Meadville, and that the only other brother who had a son named John, was Baltzer, and that son is still living. Time, place, circumstances, age and relationship all concur as evidences of identity.

3. The well-settled law as to proof of identity warranted the admission of the inscription on Margaret Croll's tombstone. Identity of name is prima-facie evidence of personal identity: McConeghy v. Kirk, 68 Pa. 200; Burns v. Hyatt, 1 Clark 323; Kelly v. Valney, 5 Clark 300; McGennis v. Allison, 10 S. & R. 197; Goodsell v. Hibbard, 32 Mich. 48; Atchison v. McCulloch, 5 W. 13; Greenl. Ev., § 575, note 3. The ruling on the question of identity in Sitler v. Gehr, 105 Pa. 577, does not collide with these authorities, as there is a good deal more evidence of personal identity in this instance than mere identity of name. Our offer of the Lancaster county records was made to rebut the proof that Balser Geehr of Berks county was a brother of Joseph Gehr, the father of Baltzer Gehr of Crawford county. The question is, whether the facts shown by those records do not so fit in with the facts testified to by Baltzer Gehr and other witnesses for the plaintiffs, as to make it probable that they are parts of the same family history, and that the Paul, Andrew and John Gehr of the records, who were the sons of John Gehr, Sr., are the same Paul, Andrew and John that, as Baltzer Gehr testified, were his father's brothers; from which it would follow that his father could not be a brother of Balser Geehr of Berks county, who was the son of Conrad Geehr.

4. That this is the case, is shown by a remarkable number of facts and circumstances, embodied in the records, which completely agree with the facts sworn to by the plaintiffs' witnesses, and make every member of the family fit into his proper place. These coincident facts completely supply every

·Arguments.

requisite which the law prescribes as necessary to show identity. Certain facts embodied in the offer, which have come to light since the trial of Sitler v. Gehr, 105 Pa. 577, viz., that John Gehr, as executor of Paul Gehr, rented the latter's farm until the youngest son became of age, and that Joseph Gehr appears to have been "tenant to John Gehr," fully answer the objection made in Sitler v. Gehr, as to the identity of the Paul Gehr who died in 1773, by their correspondence with the statement of Baltzer Gehr, that his father had lived on his brother Paul's farm. An examination of the cases cited in Sailor v. Hertzogg, 2 Pa. 182, shows that the rule requiring "some preliminary evidence" of identity, is not based so much on remoteness of the transaction, as on "the existence of circumstances to cast doubt on the identity." And see the facts in Sailor v. Hertzogg, as reported in 4 Wh. 259. See, also, Jackson v. Christman, 4 Wend. 277; Jackson v. King, 5 Cow. 241 (15 Am. Dec. 468); Abbott's Trial Ev., 101. It can no longer be asserted, however, that there is nothing but identity of name offered to be shown by these records.

*Mr. Isaac Hiester* (with him *Mr. John F. Smith, Mr. H. J. Humes* and *Mr. R. C. Frey*), for the appellees:

1. Declarations of deceased persons, who were shown by evidence aliunde to have been related to the family of Joseph Gehr, to the effect that Balser Geehr was his brother, were admissible, without showing by evidence dehors the declarations, that the declarants were related to the family of Balser Geehr: Sitler v. Gehr, 105 Pa. 577; 1 Whart. Ev., § 201; Vowles v. Young, 13 Ves. 147; Jewell v. Jewell, 1 How. 219; Monckton v. Attorney General, 2 Russ. & M. 157.

2. An inscription on a tombstone, especially an ancient one, is not admissible as proof of pedigree, without first showing the identity of the person who is the subject of the inscription: 1 Whart. Ev., § 656; 1 Greenl. Ev., § 493; Sailor v. Hertzogg, 2 Pa. 182; Wedgwood's Case, 8 Greenl. 75; Berkeley Peerage Case, 4 Camp. 401; Mooers v. Bunker, 29 N. H. 431; Jackson v. Christman, 4 Wend. 283; American Life Ins. etc. Co. v. Rosenagle, 77 Pa. 507.

3. For a similar reason, the Lancaster county records were not admissible. Moreover, those records were not evidence

Opinion of the Court.

of the name of the father of the Andrew, Paul and John Gehr mentioned in them. Recitals in deeds are not evidence of pedigree against persons who are strangers to them: Fort v. Clark, 1 Russ. 604; Shaney v. Wade, 1 Myl. & Cr. 338. Nor is such a recital evidence of the pedigree of the grantees who did not execute the deed: 1 Taylor on Ev., § 651; Shaney v. Wade, supra; Fort v. Clark, supra; 1 Greenl. Ev., § 105.

OPINION, MR. CHIEF JUSTICE PAXSON:

All the controlling questions in this case were ruled in Sitler v. Gehr, 105 Pa. 577. This was not denied by the appellants, but we were urged to re-examine and re-consider those rulings with a view to a different judgment. In view of the importance of the interests, as well as the legal principles involved, I have examined that case with more than usual care, with a disposition to modify our rulings if found erroneous. Notwithstanding the zeal and ability with which the matter has again been called to our attention, I have been unable to find anything to shake our former views of the law of that case. We do not deem it necessary now to re-enter upon its discussion. It would be in a great measure a repetition of what was there said.

The only new question is raised by the sixth assignment, in which it is alleged the learned court below erred in refusing to admit in evidence the inscription on the tombstone of Margaret Croll, the wife of Michael Croll and sister of Philip Gehr, in the churchyard near Hamburg, Berks county, under the following offer, viz:

"It having been testified by Joseph Kutz that the sister of his grandfather, Margaret Croll, lived in Greenwich township, and was buried, as much as he knows, at the Smoke Church, near Hamburg, and it having been further testified by Jonas Kohler that Margaret, wife of Michael Croll, was buried in 1832, at the church of Lebanon with the nickname of Smoke Church, now St. Paul's, the defendants propose to prove that the said Margaret Croll was buried in 1832, at a church within two miles, or two miles and a half of Hamburg, and propose to give in evidence the record on the tombstone; this for the purpose of showing that she was Mrs. Margaret Croll, wife of

Michael Croll, the date of her death and age, and that there is no tombstone showing such burial at the Smoke Church."

. While the fact here offered to be proved was not offered in Sitler .v. Gehr, the principle by which it must be decided was ruled in that case. I do not understand the offer to be more than an attempt to show that in a churchyard within two miles of Hamburg there is a tombstone, on which is inscribed the name of Margaret Croll, wife of Michael Croll, with a record of her age and death. Who this Margaret Croll was, the inscription does not inform us; but we are asked to infer from the similarity of name, and that alone, that she was a sister of Philip Gehr. I do not find any evidence in the case that Philip Gehr had a sister Margaret. Be that as it may, it appears by the testimony of Joseph Kutz that Joseph had two sisters, and that one of them married a man named Michael Croll, and the other married a Bast. But the same witness distinctly said that he did not know the first name of either sister. Jonas Kohler had testified that a Mrs. Croll, named Margaret, who was the wife of a Michael Croll, was buried in the Smoke Church in 1832. This offer was to prove the inscription on a tombstone of a Margaret Croll, who was not buried at the Smoke Church, but who was buried at St. John's Church, two and a half miles from the Smoke Church. I do not see that this evidence would have damaged the plaintiffs' case, had it been admitted. It might possibly have confused the jury, and we think was properly rejected. It involved at most a mere identity of name; and, as was said in Sitler .v. Gehr, "it would work great injustice if rights of property, after a great length of time, were allowed to depend upon mere identity of name. A prima-facie case thus submitted to a jury might be extremely difficult, if not impossible to disprove. I know of no case in which mere identity of name has been held sufficient, after the great lapse of time which exists here." This principle was sufficiently discussed in Sitler v. Gehr, and I do not propose to add to it beyond the citation of the following additional authorities as bearing upon it: 1 Whart. on Ev., § 656; 1 Greenl. Ev., § 493; Wedgwood's Case, 8 Greenl. 75; Berkeley Peerage Case, 4 Camp. 401; Mooers v. Bunker, 9 Fost. 431; Jackson v. Christman, 4 Wend. 283; American Life Ins. & Trust Co. v. Rosenagle, 77 Pa. 507.

Statement of Facts.

The seventh and eighth assignments are but a re-arrangement of the offers of evidence in regard to the Lancaster county records, as we had them in Sitler v. Gehr, and as now presented do not disclose any substantial difference.

Judgment affirmed.