**Adameze v. Adameze**

*Paul Yermish,* for plaintiff.

*Reuben Singer,* for defendant.

BARBIERI, J., September 12, 1969.—Before the court are defendant's exceptions to a master's report recommending that a divorce be granted on the ground of consanguinity.

The parties were married in Johnstown, Pennsylvania, on June 6, 1927. Plaintiff brought this action on grounds of desertion and consanguinity; the desertion ground was withdrawn for lack of proof. Plaintiff alleges that he and his wife are first cousins and, therefore, within the degrees of consanguinity prohibited in the marriage law. Although this claim was contested by defendant, after many evidentiary hearings the master found that the parties are first cousins and recommended that a divorce be granted.

Defendant excepts to the action of the master in accepting as evidence certain proofs of births offered to establish the lineage of the parties. These proofs offered by plaintiff consisted of four documents in Italian, with accompanying translations into English, which purport to be birth records from the Register of

Vital Statistics of the Municipality of Ciminna, Province of Palermo, Italy. The documents purportedly report the birth of defendant's mother to Nunzio and Conchetta Contro Calatabianco and the birth of plaintiff's mother Rosa Calatabianco to the same couple. Defendant objected to the admission of these birth records for lack of authentication. Subsequently, authentication was supplied by the Vice Consul of the United States for the Province of Palermo, Italy, whereupon the master admitted the documents into evidence. We agree, since it is clear that the documents were properly authenticated in accordance with standards approved in the case of Sitler v. Gehr, 105 Pa. 577 (1844), and more recently in Garrett Estate, 371 Pa. 284 (1952). See also, Schultz Estate, 32 D. & C. 2d 312 (1963). The proof of lineage established by the birth certificates is enhanced by the testimony of plaintiff and his sister that their mother had said she was the sister of defendant's mother.* While the mother's statements are patently hearsay, such testimony is unquestionably admissible under the pedigree exception to the hearsay evidence rule. This exception permits hearsay proof of pedigree where the declarant is dead, where the declaration was made before the controversy arose (ante litem motam), and where the declarant was related to the family of which he spoke, provided this relationship is shown by evidence dehors the declaration itself: Garrett Estate, supra. Here, the birth certificates are sufficient evidence outside the declaration to establish the relationship of plaintiff's mother to the family of which she spoke. Thus, the testimony of plaintiff and his sister was properly admitted. Moreover, after a careful review of all the proofs offered at the hearings, this court concludes that the weight of the credible evidence supports the

---

* Defendant did not deny but rather claimed no knowledge of this fact.

master's finding that the parties are first cousins. The remaining question is whether such status entitles plaintiff to a divorce.

First cousin marriages are among those within the degrees of consanguinity prohibited by The Marriage Law of August 22, 1953, P. L. 1344, section 5, 48 PS §5. That section is to be read in conjunction with the Divorce Law of May 2, 1929, P. L. 1237, sec. 10(2), which provides that when a marriage is contracted between two persons within the prohibited degrees of consanguinity, ". . . it shall be lawful for either of said parties to obtain a divorce . . ."

Since the plain meaning of those statutes cannot be ignored, this court has no choice but to hold that plaintiff is entitled to the divorce as recommended by the master. We do so with great reluctance, however, and because of our deep qualms of conscience over the socially unjustifiable result of our decision, we take this occasion to expound upon this unique and unjust state of our Pennsylvania family relations laws. Perhaps in doing so, the attention of the Pennsylvania legislature may be attracted and turned to the need for a review and remedy which will obviate unjust court actions like this one.

The parties have been married for 42 years; they have children and grandchildren. Plaintiff knowingly entered into and continued in this marriage relationship for all of those years. When he now finds his marital status inconvenient, he has only to apply to the proper court for a divorce which the court has no choice but to grant, and his wife is discarded out of hand after 42 years of marriage. The demeaning effect upon this court is obvious, when we find ourselves under legislative mandate to provide a remedy where there has been no wrong. Indeed, it is clear that the result actually frustrates in this particular the basic

and principal legislative purpose behind our divorce laws.

As was pointed out in In re Enderle Marriage License, 1 D. & C. 2d 114 (1954), the legislature had a threefold purpose in mind when it proscribed marriage within certain degrees of consanguinity:

". . . (1) To maintain the Divine Law forbidding the marriage of close relatives; (2) for eugenic reasons, to preserve and strengthen the general racial and physical qualities of its citizens by preventing inbreeding; and, (3) to maintain the sanctity of the home and prevent the disastrous consequences of competition for sexual companionship between members of the same household or family." Id. at 120.

The prohibition of first cousin marriages cannot possibly be sustained as an effectuation of that legislative intent.

Considering first the Divine Law purpose, we note that the basic source of legislation relating to marriages between blood relatives is the Bible, particularly Leviticus, Ch. XVIII, V. 6-18, and that the Biblical injunction does not extend to first cousins. Consequently, the lack of Biblical proscription makes it quite clear that we cannot point to the Divine Law to support our statutory prohibition against marriages between first cousins.

Moreover, as for the other reasons mentioned in Enderle, we note that whereas first cousin marriages are lawful in a large majority of the United States, (Story on Conflicts of Law, §114 b.), there has been no sign of weakening racial or physical qualities in those States, nor has there been demonstrable evidence of consequences of "the disastrous competition for sexual companionship" resulting from first cousin marriages.

Having reviewed the current considerations relating to the status of first cousin marriages in the

United States, no support is found anywhere for perpetuating the Pennsylvania prohibition and, accordingly, it is fervently hoped that legislation to correct the inequity of this particular consanguinity rule will receive favorable consideration by our general assembly.

## ORDER

And now, this September 12, 1969, defendant's exceptions to the report of the master are dismissed. A final decree will be entered.